IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
DEC - 5 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

| | |
|---|---|
| United Healthcare Insurance Company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:13-cv-00985-TSE-TRJ |
| ) | |
| Paragon Systems, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION

This matter is before the court on plaintiff's motion for default judgment (no. 10) against defendant Paragon Systems, LLC (hereinafter "Paragon"). Plaintiff UnitedHealthcare Insurance Company ("UnitedHealthcare") filed the complaint on August 14, 2013 alleging that defendant breached insurance policy contracts (no. 1). Process was served on defendant's registered agent through a private process server on August 16, 2013 (no. 3). The Clerk entered default against defendant on September 27, 2013 (no. 7). To date, defendant has not filed any answer or responsive pleading. Upon consideration of the record and for the reasons stated below, the magistrate judge recommends that default judgment be entered in plaintiff's favor against Paragon Systems in the amount of $202,399.67 plus post-judgment interest.

### Jurisdiction and Venue

This court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship between defendant and plaintiff and the amount in controversy exceeds $75,000.00. Plaintiff is a citizen of Connecticut, as it is incorporated in Connecticut and has its

principal place of business in Connecticut. Defendant Paragon is a limited liability company. A limited liability company shares the citizenship of its members. *SunTrust Bank v. Village at Fair Oaks Owner, LLC*, 766 F. Supp. 2d 686, 688 (E.D. Va. 2011). None of defendant's identified principals are citizens of Connecticut and therefore there is complete diversity between parties.[1] Here, the amount in controversy is $202,399.67, which exceeds the jurisdictional requirements.

This court properly exercises personal jurisdiction under Va. Code § 8.01-328.1 (A)(1) and Fed. R. Civ. P. (4)(k) as defendant has its principal place of business in Virginia and was served with process in this judicial district. Venue is this district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) in that a substantial part of the events or admissions giving rise to this action occurred in the Eastern District of Virginia and in that defendant resides there.

## Standard

Federal Rule of Civil Procedure 55 permits the court to grant a motion for default judgment where the well-pled allegations of the complaint establish plaintiff's entitlement to relief, and where a defendant has failed to plead or defend as provided by and within the time frames contained in the rules. *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985); Fed. R. Civ. P. 55. By defaulting, a defendant admits the plaintiff's well-pled allegations of fact, which then provide the basis for judgment. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). *See also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318,

---

[1] In the Affidavit of Zeenat Iqbal, plaintiff's counsel, Iqbal stipulates under oath that the identities of the members of Paragon were not publicly disclosed in its publicly filed Articles of Organization with the Commonwealth of Virginia State Corporation Commission. Req. for Entry of Def. J (no. 6) Aff. of Zeenat Iqbal (Ex. 1- Copy of Articles of Organization). Iqbal attests that due diligence was exercised to find the identities of the company's members. *Id.* Iqbal identified five individuals who are presumably affiliated with Paragon Systems and none of theese individuals are citizens of Connecticut but are citizens of Virginia and Texas. *Id.* at 2. The magistrate judge finds that the information provided by Zeenat Iqbal's Affidavit is sufficient to find that the court properly exercises diversity subject matter jurisdiction in this case.

2

322 n.2 (4th Cir. 2008) (citing *Ryan*); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has effect of admitting factual allegations in complaint); *Marion County Court v. Ridge*, 13 F.2d 969, 971 (4th Cir. 1926) (default admits well-pled facts).

## Factual Background

This matter involves a breach of contract between plaintiff insurance company, UnitedHealthcare and its insurance policy holder, Paragon. This action arose out of two Group Policy Insurance Agreements (collectively, the "Group Policies") in which UnitedHealthcare contracted to provide insurance coverage for Paragon's employees, and Paragon was obligated to pay monthly premiums for that coverage. Compl. ¶ 5. UnitedHealthcare issued Paragon a Group Health Insurance Policy (the "Health Policy"), effective as of January 1, 2012. Compl. ¶ 6, Ex. A. UnitedHealthcare also issued Paragon two Group Insurance Policies providing coverage for Basic Life, Accident Death and Dismemberment, Supplemental Life, Supplemental Dependent Life, Short Term Disability and Long Term Disability (collectively, the "Life Policies"), effective as of January 1, 2012. Compl. ¶12, Ex. C.

### *The Group Health Insurance Policy*

Under the Group Health Insurance Policy, Paragon was obligated to pay UnitedHealthcare's charges for monthly premiums. Articles 3 and 4 of the Health Insurance Policy set forth UnitedHealthcare's monthly premium charges and described Paragon's payment obligations. Compl. ¶7, Ex. A. The contract terms provided that "the first "Policy Charge" is due and payable on or before the effective date of this policy. Subsequent policy charges are due and payable no later than the first day of each payment period specified in item 6 of Exhibit 1, while this policy is in force." *Id.* Pursuant to the Health Insurance Policy, in the event that any policy charge was not received within 10 calendar days following the due date a late payment charge

was assessed. *See* Ex. A at § 3.4. Moreover, the policy provided that the "[e]nrolling Group must reimburse us for attorney's fees and any other costs related to collecting delinquent Policy Charges." *Id.* The policy terms incorporated a thirty-one (31) day grace period, during which Paragon's benefits would continue in the event of a late payment of policy premiums. Compl. ¶8, Ex. A at § 3.5.[2] The policy agreement provided that the policy would terminate in the event that the grace period expired and the past due policy charge remained unpaid. *Id.*

Paragon made payments of charges for premiums on the health policy, in varying amounts and frequencies, from January 2012 through December 2012. Compl. ¶ 9, Ex. B.[3] Due to nonpayment of policy premiums, UnitedHealthcare terminated the health policy on December 31, 2012. Compl. ¶ 10. UnitedHealthcare honored all valid claims made through that date and fulfilled all of its obligations under the policies. *Id.* Upon termination of the policy, Paragon's balance of unpaid premiums on the health policy was and now still is $191,963.94. Compl. ¶ 11.

*The Group Life Insurance Policies*

Paragon also accrued a balance of unpaid premiums on the Life Policies in violation of the policy agreements. The Life Policies' general provisions describe Paragon's payment obligation. Comp. ¶13, Ex. C. The general provisions provided that:

> "For insurance to remain in effect, each subsequent premium must be paid on or before its due date. The Policyholder is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at Our Home Office. A Grace Period of 31 days from the Premium Due Date will be allowed for the payment of each premium after the first premium payment. During the Grace Period, the insurance will remain in effect provided the premium is paid before the end of the Grace Period." *Id.*

---

[2] Article 3.5 of the Health Policy defined the terms of that grace period as follows: "A grace period of 31 days will be granted for the payment of any Policy Charge not paid when due. During the grace period, this Policy will continue in force... This Policy terminates as described in Article 5.1 if the grace period expires and the past due Policy Charge remains unpaid."

[3] Compl. Ex. B is a copy of a ledger reflecting the Health Policy premiums and payments made by Paragon.

Paragon sporadically made payments of charges for premiums on the Life Policies, in varying amounts and frequencies, from January 2012 through December 2012. *See* Compl. ¶ 13, Ex. D.[4] Due to nonpayment of policy premiums, UnitedHealthcare also terminated the Life Policies on December 31, 2012. Compl. ¶15. UnitedHealthcare honored all valid claims made through that date. *Id.* Upon the termination of the Life Policies, Paragon's had an outstanding balance of unpaid premiums. Compl. ¶ 17.

In response to defendant's unpaid premium balances on both policies, UnitedHealthcare sent demand letters to Paragon. On April 10, 2013, UnitedHealthcare sent a demand letter to Paragon, indicating that it expected payment of the $191,963.94 outstanding balance on the Health Policy. Compl. ¶ 16, Ex. E. On March 15, 2013 and April 10, 2013, UnitedHealthcare sent Paragon demand letters indicating that it expected payment of the $10,435.73 outstanding balance on the Life Policies. Compl. ¶ 1, Ex. F. Paragon did not respond to UnitedHealthcare's initial demand letters. Compl. ¶ 18. Subsequently, on May 7, 2013, May 23, 2013 and July 23, 2013, counsel for UnitedHealthcare sent via regular and certified mail letters to Paragon demanding payment of outstanding balances on the Group Policies. Compl. ¶ 19, Ex. G, Ex. H.[5] Paragon failed to respond to these three demand letters. Compl. ¶¶ 20-24. To date, Paragon has accrued at least $202,399.67 in unpaid premiums on the Group Policies. Compl. ¶ 25.

## Discussion and Findings

Plaintiff filed a three count complaint against defendant for: I) Breach of Group Health Policy Contract; II) Breach of Group Life Policy Contracts and III) Quantum Meruit. After reviewing plaintiff's well-pled complaint, memorandum in support of default judgment, and

---

[4] Compl. Ex. D is a copy of a ledger reflecting the premiums and payments made by Paragon on the Life Policies.
[5] Paragon's representative, Ram, signed for the letter when it was received on May 10, 2013. A copy of the May 7, 2013 demand letter and its return receipt are collectively attached as Compl. Ex. G. Paragon's representative, Suresh Bhuma, signed for the letter when the company received it on May 28, 2013. Compl. Ex. H. Paragon's representative, Suresh Bhuma, signed for the letter when the company received it on July 28, 2013. Compl. Ex. I.

documents in support thereto, the magistrate judge finds that plaintiff has alleged sufficient facts establishing that it is entitled to default judgment in its favor on Counts I and II for breach of Group Policies. As defendant has not timely responded to this action, the magistrate judge finds that an entry of default judgment is in order and makes the following findings in support:

The magistrate judge finds that Virginia law controls in this matter where subject matter jurisdiction is properly exercised by this court based on diversity. A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, as the Group Policies were performed in Virginia and does not contain a choice of law provision to the contrary, Virginia law governs. "In Virginia, the nature, validity, and the interpretation of a contract are governed by the law of the place of contracting." *Wellmore Coal Corp. v. Gates Learjet Corp.*, 475 F. Supp. 1140, 1143 (W.D. Va. 1979) (citing *Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 426, 177 S.E.2d 610, 613 (1970)). Under Virginia law, courts uphold the intent of the contracting parties as expressed through contractual language. *Bender-Miller Co. v. Thomwood Farms, Inc.*, 211 Va. 585, 588, 179 S.E.2d 636 (1971).

The magistrate judge finds that defendant breached the Group Health Policy Contract and Group Life Policy Contracts by defaulting on its contract obligations and accordingly, plaintiff is entitled to relief under Counts I and II. Under Virginia law, a defendant is liable for breach of contract when the plaintiff can plead and prove: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009) (citing *Filak v. George*, 267 Va. 612, 619 (2004)).

### *1. Count I- Breach of Group Health Policy Contract*

In applying the applicable Virginia case law, the magistrate judge finds that plaintiff has pled sufficient facts to prove that the three required elements of breach of contract are satisfied with respect to the Group Health Policy contract. First, the magistrate judge finds that United Healthcare entered into binding and enforceable contracts with Paragon for group health insurance coverage and life and disability insurance coverage which were effective from the date of issue, January 1, 2012 to December 31, 2012, the date of termination. Under the Group Health Policy contract, Paragon was required to pay monthly premiums for retention of insurance benefits. Second, the magistrate judge finds that although plaintiff fulfilled all of its obligations under the contract, Paragon breached its duty by failing to pay all of its required monthly premiums due. Third, the magistrate judge finds that plaintiff was harmed in the amount of $191,963.94 for unpaid premiums under the Health Policy contract.

### *2. Count II- Breach of Group Life Policy Contracts*

Furthermore, the magistrate judge finds that plaintiff has pled sufficient facts to prove that the required elements of breach of contract are satisfied with respect to the Group Life Policy contracts. First, the magistrate judge finds that there was an enforceable Group Life Policy contracts entered into by Paragon and UnitedHealthcare. Under the these policies, Paragon was required to pay monthly premiums for retention of group life insurance, accidental death and dismemberment, and disability coverage benefits provided by plaintiff on behalf of Paragon's employees. Second, the magistrate judge finds that Paragon breached its obligations by failing to pay all monthly premiums as required by the clear terms of the contracts. Third, as a result of Paragon's breach, the magistrate judge concludes that plaintiff has suffered harm in

the amount of $10,435.73 for unpaid premiums under the Life Policy contracts.

### 3. *Count III-Quantum Meruit*

Having found that defendant breached enforceable written contracts warranting relief under Counts I and II, the magistrate judge need not decide plaintiff's alternative Count III, Quantum Meriut claim, seeking equitable relief for the same monetary relief for unpaid premiums.

### Recommendation

The magistrate judge recommends that plaintiff's motion for default judgment be granted, and that default judgment be entered in the amount of $202,399.67 which is the aggregate of $191,963.94 for Group Health Policy unpaid premiums and $10,435.73 for Group Life Policies unpaid premiums.[6]

### Notice

By means of the court's electronic filing system, and by mailing a copy of this report and recommendation to defendant at its addresses for service of process, the parties are notified as follows. Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

---

[6] Plaintiff's complaint asks for pre-judgment interest and attorney's fees and costs (no. 1 at 8), but plaintiff does not seek such relief in its Motion for Entry of Default Judgment (no. 10) and does not allege any basis for entitlement to such relief. Plaintiff also requests that the court order interest on the judgment pursuant to Virginia state law. However, an award of post judgment interest in any federal civil suit including a diversity action is governed by the federal post judgment interest statute, 28 U.S.C. §1961, and is a matter of course. *See Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir. 1989). Therefore, this court need not make any findings with respect to post judgment interest.

8

/s/
_____
Thomas Rawles Jones, Jr.
United States Magistrate Judge

December 5, 2013

Alexandria, Virginia

9